JOHN T. McMAHAN and
NORTHWESTERN NASAL AND SINUS
ASSOCIATES, S.C.,

      Plaintiffs,

      v.

DEUTSCHE BANK AG; DEUTSCHE
BANK SECURITIES, INC., ROBERT
GOLDSTEIN, AMERICAN EXPRESS TAX
AND BUSINESS SERVICES, INC. n/k/a
McGLADREY & PULLEN, LLP

      Defendants.

No. 12 C 4356
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiffs, John T. McMahan and Northwestern Nasal and Sinus Associates ("NNASA"),

filed an eight-count complaint against Deutsche Bank AG ("DB"), Deutsche Bank Securities,

Inc. ("DBSI") (collectively, the "Deutsche Bank Defendants"), Robert Goldstein, and American

Express Tax and Business Services ("AMEX") (collectively, the "AMEX Defendants").

Plaintiffs' complaint seeks damages for civil conspiracy, fraud, negligent misrepresentation,

violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, breach of

fiduciary duty, assisting in the breach of fiduciary duty, breach of contract, and professional

malpractice. All counts arise out of Plaintiffs' participation in a now well-known tax shelter

scheme that was created, promoted and executed by a network of banks, accounting firms and

law firms across the country. The purported tax benefits of the scheme were ultimately

disallowed by the IRS, resulting in substantial fines and back tax payments for those who

participated. A few of the parties most responsible for the design and implementation of the scheme have been criminally prosecuted, and other individuals and entities involved have made substantial settlement payments to the United States government in order to avoid prosecution.

Defendants have moved to dismiss all counts. Despite the background of the tax-shelter scheme at issue in this case, my only task here is to assess the adequacy and timeliness of Plaintiffs' complaint. For these purposes, I accept the following facts from the Complaint as true.

## I.    FACTS ASSUMED IN THE COMPLAINT

In the early 1990s, McMahan and NNASA, a corporation owned by McMahan, retained Defendant Goldstein, a certified public accountant, to perform tax and accounting services. Goldstein annually advised McMahan to make certain investments for purposes of reducing his income tax liability.  In 2001, Goldstein referred McMahan to the now-defunct law firm Jenkens & Gilchrist ("Jenkens") to engage in a tax shelter strategy known as "Son of Bond and Option Sales Strategy" (hereinafter "Son of BOSS").  Goldstein and Erwin Mayer, a lawyer from Jenkens, met with McMahan in 2001 and explained to him that Son of BOSS was a legitimate investment strategy that would either generate profits or capital losses that could be used to reduce his income tax liability. McMahan was told that Jenkens would prepare an independent legal opinion letter approving the Son of BOSS investment, which would protect Plaintiffs in the event of an IRS audit.  McMahan was also told that Deutsche Bank would handle the underlying financial transactions, which involved the sale of foreign currency options.  Relying on these assurances, McMahan decided that he and NNASA would participate in Son of BOSS.

Despite these representations, Defendants knew that Son of Boss was an illegitimate tax-saving strategy designed solely to avoid tax liability and reap large fees from investors.

Unbeknownst to Plaintiffs, Son of BOSS had been designed and structured by Jenkens attorneys and Deutsche Bank employees in such a way that it was impossible to generate legitimate tax-deductible losses, and nearly impossible to generate profits. Based on a notice released by the IRS in 2000 ("Notice 2000-44"), Defendants knew that the IRS was investigating Son of BOSS under suspicion that it lacked economic substance, and would likely soon disallow all deductions claimed as capital losses stemming from the program.

Nevertheless, Jenkens, DB, Goldstein and American Express Tax and Business Services ("AMEX"), an accounting firm that employed Goldstein during the relevant time period, entered into an agreement whereby Goldstein and AMEX would represent to Plaintiffs that Son of BOSS was a legitimate tax-saving strategy, recommend that Plaintiffs participate in the underlying options, and prepare Plaintiffs tax returns to include losses from the Son of BOSS investment. In return, Goldstein and AMEX would receive a portion of the fees paid by investors to Jenkens for each Son of BOSS sale. Deutsche Bank agreed to participate in the scheme by executing the underlying currency transactions despite full knowledge that these transactions lacked economic substance and that Jenkens was falsely representing the tax-saving benefits of the strategy to investors. As a result of the above scheme, Plaintiffs filed a 2001 tax return that incorrectly determined Plaintiffs' true tax basis due to the illegitimate treatment of the Son of BOSS investment.

In December 2001, the IRS announced an amnesty program that allowed participants who voluntarily disclosed their participation in tax shelter strategies, such as Son of BOSS, to minimize liability for underpayment penalties without conceding liability for back taxes or interest. Defendants and the other co-conspirators concealed the amnesty program from Plaintiffs. In June 2003, the IRS formally invalidated a number of tax shelter strategies,

including Son of BOSS, by issuing new regulations retroactive to October 1999. Defendants did not inform Plaintiffs of the IRS's action.

On October 26, 2010, the IRS issued a Notice of Final Partnership Administrative Adjustment (FPAA), in which Plaintiffs were advised that an increase in tax basis of $2,075,000 relating to the Son of BOSS investment was disallowed. As a result, Plaintiffs owed the IRS hundreds of thousands of dollars in additional taxes, penalties, and interest payments.

A 2005 U.S. Subcommittee Report found that tax shelters, like Son of BOSS, could not have been executed without the active and willing participation of major banks. Further, the report mentioned Deutsche Bank, among others, as having "provided billions of dollars in lending critical to transactions which the banks knew were tax motivated, involved little or no credit risk, and facilitated potentially abusive or illegal tax shelters."

In March 2007, the United States Department of Justice entered into a non-prosecution cooperation agreement with Jenkens, in which Jenkens admitted to developing fraudulent tax shelters and issuing fraudulent opinion letters. Several Jenkens employees were convicted of tax fraud. Further, the firm settled a multimillion-dollar class action lawsuit arising from the improper use and marketing of fraudulent tax shelters.

## II.     STANDARD OF REVIEW

In addressing a motion to dismiss, the Court accepts the plaintiffs' allegations as true and draws reasonable inferences in their favor. *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010). Federal Rule of Civil Procedure 8(a)(2) requires the plaintiffs to provide "a short and plain statement" showing that they are entitled to relief. This statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 506 (2002). Though a complaint need not contain "detailed factual

allegations, a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.    ANALYSIS

### A.    Statute of Limitations

All Defendants have moved to dismiss on the grounds that Plaintiffs' claims are time-barred. The statute of limitations is an affirmative defense. "While complaints typically do not address affirmative defenses, the statute of limitations may be raised in a motion to dismiss if the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (citation omitted).

Four of Plaintiffs' causes of action are common law tort claims (civil conspiracy, fraud, negligent misrepresentation and assisting breach of fiduciary duty), subject to a five-year limitations period under Illinois law. *See* 735 ILCS 5/13-205. The complaint also asserts a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), which is subject to a three-year statute of limitations. *See* 815 ILCS 505/10a(e).

On October 16, 2012, I stayed this case pending the Illinois Supreme Court's decision in *Khan v. Grant Thornton, LLP*. 365 Ill. Dec. 517 (Ill. 2012). At issue in *Khan* was the proper application of Illinois's "discovery rule," which establishes the start of the period of limitations, to tort claims brought by investors who had suffered losses in a similar abusive tax shelter. The *Khan* court held that the limitations period did not begin to run against the investors' claims until they received a notice of deficiency from the IRS. *Id.* at 533. It was not until the deficiency

notice issued, the Court held, that the taxpayer is "on notice that he has suffered an injury and that the injury was wrongfully caused." *Id*.

In the instant case, Plaintiffs received the notice of deficiency on October 26, 2010. Plaintiffs filed their complaint on March 26, 2012. Under *Khan*, all claims in this case are timely.

B.     AMEX and Goldstein's Motion to Compel Arbitration

Defendants AMEX and Goldstein move to compel arbitration of all claims brought against them based on an arbitration agreement contained in a 2004 engagement letter with Plaintiffs. I deny this motion. To properly compel arbitration under 9 U.S.C. § 4, I need to see a written agreement that covers the relevant time periods of this case. Plaintiffs' claims against AMEX and Goldstein arise from representations and acts made in 2001. There is no language in the 2004 engagement letter to suggest that it applies retroactively, and I am unwilling to compel arbitration based only on Defendants' assurances that the same language was used in their engagement letters "in the early 2000's." (Goldstein Aff., ¶ 3). If an arbitration agreement covering the relevant time period does in fact exist and Defendants are able to produce it a later stage, I will revisit this motion.

C.     Choice of Law as to the Deutsche Bank Defendants

The Deutsche Bank Defendants argue that New York law governs Plaintiffs' claims against them because Plaintiffs entered into account-opening agreements that contained New York choice of law clauses. In Illinois, tort claims dependent upon a contract are subject to the contract's choice of law provision. *Amakua Dev. LLC v. Warner*, 411 F.Supp.2d 941, 955 (N.D. Ill. 2006). Plaintiffs' claims against the Deutsche Bank Defendants are not dependent upon the account-opening agreements because, as I interpret it, the Complaint is based entirely on tortious

conduct leading up to the execution of the agreements. *See, e.g., Chicago Printing Co. v. Heidelberg USA, Inc*, No. 01 C 3251, 2001 WL 1134862, at *3 (N.D. Ill. Sept. 25, 2001) (fraudulent inducement and negligent misrepresentation claims stemming from events prior to execution of contract not subject choice of law provision); *Union Oil Co. v. John Brown E & C*, No. 94 C 4424, 1994 WL 535108, at *2–3 (N.D.Ill. Sept. 30, 1994) (same; negligent misrepresentation).

Specifically, the Complaint seeks to hold the Deutsche Bank Defendants directly and vicariously liable (as co-conspirators) for misrepresentations (and related breaches of fiduciary duty) made to Plaintiffs about 1) the legitimacy of the Son of BOSS investment; and 2) the potential tax benefits it could provide. None of this conduct is based on the interpretation or construction of the account agreements, and the Deutsche Bank Defendants could potentially be liable as co-conspirators even if the account agreements did not exist. *See Amakua Dev.*, 411 F.Supp.2d at 955. The conduct is "closely related" to the parties' contractual relationship in the sense that the account agreement is the product of the allegedly wrongful inducement. However, as explained, the fact that the account agreements were executed subsequent to the complained of conduct defeats application of the choice of law provisions. Illinois law governs all claims in this case.

D.     Count II: Fraudulent Misrepresentation

All Defendants move to dismiss Count II alleging common law fraud. In Illinois, fraud claims require a five-part showing: (1) a false statement or omission of a material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendant's intent to induce the Plaintiff to act; (4) the plaintiff's reliance upon the truth of the statement; and (5) damages to the plaintiff resulting from his reliance on the statement. *See Connick v. Suzuki Motor Co., Ltd.*,

174 Ill.2d 482, 496 (Ill. 1996). Fed. R. Civ. P. 9(b) requires a party alleging fraud to state the "who, what, when, where, and how" of the circumstances surrounding the fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

Defendants argue that Plaintiffs' fraud allegations are inadequate for a number of reasons. First, Defendants argue that Plaintiffs fail to point to any specific misrepresentations made by any of the Defendants. That is not quite true. Paragraph 72 and 73 of the Complaint reference a meeting between Goldstein, Mayer and McMahan, in which McMahan was told that Son of BOSS was a legitimate investment strategy for minimizing tax liability. McMahan was further told that Jenkens would provide an independent opinion letter approving of the strategy, which would provide McMahan cover in the event of an IRS audit. Both statements were false because 1) Goldstein and Mayer knew that Son of BOSS was rigged such that it could not produce profits and lacked economic substance such that it could not generate legitimate tax benefits; and 2) the opinion letter was not "independent" because, unbeknownst to McMahan, Jenkens itself had designed the Son of BOSS tax shelter.

The AMEX Defendants argue that the representations made at the alleged meeting are not actionable because they were no more than predictions that Son of BOSS would be upheld by the IRS. *See Berry v. Indianapolis Life Ins. Co.*, 600 F.Supp.2d 805 (N.D. Tex. 2009). I disagree. The misrepresentations alleged in this case go beyond predictions about how the IRS would treat Son of BOSS. The Complaint alleges that Goldstein and McMahan misrepresented the nature of the investment itself (they knew it was rigged and could not possibly generate profits) and Jenkens's role as independent legal counsel (Jenkens was anything but independent).

Further, Defendants knew that the underlying foreign option transactions lacked economic substance and thus could not produce valid tax benefits. Courts have widely used the

"economic substance doctrine" to assess the validity of tax shelters under the Internal Revenue Code since at least the 1980s. *See generally* Joseph Bankman, *The Economic Substance Doctrine*, 74 S. Cal. L. Rev. 5, 7-11 (2000). Thus, any affirmative statements made by the Defendants that Son of BOSS could produce valid tax benefits in 2000 were materially false at the time they were made, which distinguishes this case from *Berry*. The question was not whether Son of BOSS could generate legitimate capital losses to offset gains; the question was whether the IRS would detect the true nature of the scheme.

Nevertheless, the allegations surrounding the meeting between Goldstein, Mayer and McMahan fail to satisfy Rule 9(b). Plaintiffs give no information as to when the meeting took place, where it was held, or who said what. *See Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (internal quotation omitted). It is particularly important for Plaintiff to specify the identity of the person making false statements at this meeting since Mayer is not a named defendant in this case.

Outside of this alleged meeting, Plaintiffs do not point to any specific affirmative statements made by Defendants that they allege to be fraudulent.[1] Rather, they describe the general conduct involved with executing the scheme (i.e. the DB Defendants circulated "certain" communications that gave Son of BOSS the appearance of legitimacy (¶ 50); Goldstein prepared the 2001 tax return utilizing losses manufactured from Son of BOSS with full knowledge that the losses could not legitimately be claimed as tax benefits) and argue that these acts amounted to affirmative misrepresentations.

---

[1] Plaintiffs' general averment that "certain writings, oral statements and visual presentations" circulated by Defendants "constituted an affirmative representation that Son of BOSS was legitimate and legal" (¶ 50) does not satisfy Rule 9(b) because it does not identify which particular Defendant(s) made the communications, nor does it specify which communications contained misrepresentations. *See, e.g., Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (dismissing complaint that "lumps all the defendants together and does not specify who was involved in what activity."). The same "who" and "what" problems are present in paragraphs 49, 53, and elsewhere in the Complaint.

What Plaintiffs are really alleging here is fraudulent concealment (or fraud by omission), which I will interpret Count II as encompassing. In addition to the basic elements of fraud, fraudulent concealment requires a plaintiff to "allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *See Smith v. Duffey*, No. 07 C 5238, 2008 WL 4874088, at *2 (quoting *Connick*, 174 Ill.2d at 500). "A duty to disclose a fact may arise out of several situations," including fiduciary or confidential relationships, or "a situation in which a plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff." *Connick*, 174 Ill.2d at 500. "[A] position of superiority may arise by reason of friendship, agency, or experience." *Id*.

Drawing all reasonable inferences in Plaintiffs' favor, I find that they have successfully alleged that the AMEX Defendants owed them a duty to disclose based on a fiduciary relationship. The fiduciary relationship was based on Plaintiffs' long-term relationship with Goldstein, and the fact that Goldstein advised Plaintiffs to participate in, and vouched for the legitimacy of, a complex tax-shelter scheme. *See Peterson v. H&R Block Tax Services, Inc.*, 971 F.Supp. 1204, 1213-14 (N.D. Ill. July 10, 1997) (under Illinois law, ad hoc fiduciary relationship may exist between a tax advisor or accountant and client where the parties' have "long-term, ongoing relationships" or where "complex investment advice" has been rendered); *Burdett v. Miller*, 957 F.2d 1375, 1382 (7th Cir. 1992) (district court entitled to find a fiduciary relation under Illinois law where accountant "cultivated a relation of trust . . . over a period of years," and invited client "to accept his advice . . . and [rely] on his insight into the arcana of tax shelter investments.").

Given this relationship, Goldstein had a duty to disclose material facts about the Son of BOSS investment prior to filing their 2001 tax returns. As alleged in the Complaint, these facts

included: 1) that Son of BOSS lacked economic substance; 2) that Jenkens was not rendering independent legal advice; 3) that the IRS was investigating Son of BOSS and other tax shelters; 4) that the IRS does not allow individuals to claim tax benefits from investments that lack economic substance; and 5) that the IRS was offering a "tax amnesty program" for individuals who had participated in potentially abusive tax schemes. Plaintiff has also adequately pled that the omissions were intended to, and reasonably did, induce reliance (¶ 56), and that Goldstein's failure to disclose material information caused their injury (¶ 93-94).

Plaintiffs' fraudulent concealment claims, however, have not satisfied the heightened pleading requirements of Rule 9(b). *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011). Plaintiffs must provide greater detail about the circumstances surrounding the omissions, including when and where they occurred, and what material facts should have been disclosed at what times. While it may be more difficult to plead with particularity the circumstances surrounding an omission (i.e. when/where something that did not occur should have occurred) than an affirmative misrepresentation, Defendants are entitled to clearer notice than what is provided in the Complaint.[2] All of the information Plaintiffs need to satisfy Rule 9(b) with respect to the circumstances surrounding the omissions is in their possession, so I see no reason to relax the application of the particularity requirement here. *Cf. PharMerica Chicago, Inc. v. Meisels*, 772 F.Supp.2d 938, 955 (N.D. Ill. Feb. 16, 2011).

---

[2] A properly pled allegation of fraud by omission would look something like this: "On [date X], McMahan met with Goldstein at [location Y] to discuss the Son of BOSS investment. At this meeting, Goldstein intentionally failed to disclose [fact Z] in order to induce Plaintiffs' to participate in the tax shelter. [Fact Z] was material because Plaintiff's would not have gone forward with the investment had they known about it. Goldstein had a duty to disclose [fact Z] because he was in a position of superiority over Plaintiffs in that he was rendering complex investment advice. Goldstein's failure to disclose [fact Z] caused Plaintiff to rely on the fact that [fact Z] did not exist, which belief was necessary for Plaintiffs to follow through with the investment." Or something to that effect.

Plaintiffs' fraudulent concealment claim against the Deutsche Bank Defendants fails under Rule 9(b), and because the Complaint contains no facts to suggest that the Deutsche Bank Defendants owed Plaintiffs a duty to disclose. The facts in the Complaint suggest that Plaintiffs had very little direct interaction with the Deutsche Bank Defendants. There is nothing from which I can reasonably infer the existence of a long-term relationship, receipt of investment advice directly from Deutsche Bank personnel, or the exercise of "dominance" such that an ad hoc fiduciary relationship could be imposed. *See Tully v. McLean*, 409 Ill.App.3d 659, 683 (2011) ("The essence of a fiduciary relationship is that one party is dominated by another; the presence of a significant degree of dominance and superiority."). Based on the failure to plead a duty to disclose, the fraudulent concealment claims against the Deutsche Bank Defendants fall short.

Defendants' motion to dismiss Count II is GRANTED with respect to all Defendants.[3]

E.       Count III: Negligent Misrepresentation

Defendants next move to dismiss Plaintiffs' claim for negligent misrepresentation. In Illinois, negligent misrepresentation has "essentially the same elements [as fraud], except that . . . [t]he defendant need not know the statement is false." *Board of Educ. of City of Chicago v. A,C, and S, Inc.*, 131 Ill.2d 428, 452 (Ill. 1989). Additionally, the Plaintiff must allege that "the defendant owes a duty to the plaintiff to communicate accurate information." *Id*. The RESTATEMENT (SECOND) OF TORTS defines negligent misrepresentation as follows:

---

[3] The Deutsche Bank Defendants have submitted along with their motion to dismiss a purported copy of the letter agreement that governed the digital swap transaction executed in furtherance of the Son of BOSS investment strategy. (Dkt. No. 21, Ex. 2). The letter contains a non-reliance clause which states that, in entering into the swap transaction, Plaintiffs were "not relying on any communication (written or oral)" by the Deutsche Bank Defendants. *Id*. However, the copy of the letter agreement submitted to the Court is not signed by Plaintiffs and there is no evidence that Plaintiffs ever executed and returned the agreement, which appears to have been a condition precedent. While the disclaimer could potentially rule out any direct liability for fraud or negligent misrepresentation as to the Deutsche Bank Defendants, at this stage I decline to dig further into outside evidence to determine the validity of the non-reliance clause. I do note, however, that its wording encompasses only affirmative fraud and not fraudulent concealment. *See Benson v. Stafford*, 407 Ill.App.3d 902, 927-928 (2010).

Information Negligently Supplied for the Guidance of Others

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

RESTATEMENT (SECOND) OF TORTS § 552 (1965), *cited with approval in Zurad v. Lehman Bros. Kuhn Loeb Inc.*, 757 F.2d 129, 134 (7th Cir. 1985).

Plaintiffs have adequately pled negligent misrepresentation in the alternative to fraud against the AMEX Defendants based on the alleged meeting between McMahan, Goldstein and Mayer in which McMahan was told by Goldstein and Mayer that Son of BOSS could produce legitimate tax benefits or investment gains (¶¶ 72-73).[4] The complaint adequately alleges that Goldstein, in the course of his profession, offered information intended to guide Plaintiffs in a complex investment decision (¶¶ 71-73). It can be plausibly inferred from the well-pleaded facts in the Complaint that Goldstein breached his duty to exercise reasonable care in communicating this information through a combination of key omissions and affirmative false statements, and that these omissions and false statements caused Plaintiffs' injury. *Id. See generally Zurad*, 757 F.2d at 134.

Plaintiffs' negligent misrepresentation claim against the Deutsche Bank Defendants fails for similar reasons as its fraud claim—they have not adequately alleged that the Deutsche Bank Defendants owed them a duty. There are insufficient facts in the Complaint to support a reasonable inference that the Deutsche Bank Defendants themselves furnished information for the guidance of Plaintiffs investment decisions. Rather, the Complaint supports only that the

---

[4] Although Plaintiffs failed to plead the circumstances of this meeting with particularity, negligent misrepresentation claims are not subject to Rule 9(b). *See Tricontinental Industries Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007).

Deutsche Bank Defendants exercised an arms-length transaction with Plaintiffs after Plaintiffs received investment guidance from other parties (Goldstein and Mayer).

Defendants' motion to dismiss Count III is DENIED with respect to the AMEX Defendants and GRANTED with respect to the Deutsche Bank Defendants.

F.      Count IV: Violation of the ICFA

Defendants next move to dismiss Count IV, which alleges that Defendants violated Section 2 of the ICFA by making material misrepresentations and omissions concerning the Son of BOSS Investment.  The ICFA makes it "unlawful to use deception or fraud in the conduct of trade or commerce."  *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir, 2011).  To succeed on an ICFA claim, a plaintiff must prove "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately cause by the Deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 190 (Ill. 2005).  ICFA claims premised on fraud must meet the heightened pleading standards of Rule 9(b), while unfair practice claims are subject to Rule 8 pleading requirements.  *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011).  Under the ICFA, it is not necessary to plead a common-law duty to disclose in order to state a claim for fraud based on an omission or concealment. *See, e.g., Celex Group, Inc. v. Executive Gallery, Inc.*, 877 F.Supp. 1114, 1129-30 (N.D. Ill. 1995).

Plaintiffs' ICFA claims fail against all Defendants because they are premised entirely on fraudulent conduct (¶ 149), and, as explained above, none of the allegations satisfy Rule 9(b).[5]

---

[5] If Plaintiffs are able to satisfy Rule 9(b) as to omissions made by the Deutsche Bank Defendants, they can establish an ICFA claim despite the lack of a common law duty to disclose.

Defendants' motion to dismiss Count IV is GRANTED with respect to all Defendants.

   G.   Counts V, VI, and VII

The AMEX Defendants move to dismiss Count V for breach of fiduciary duty and Count VII for breach of contract as duplicative of Count VIII for accounting malpractice. Under Illinois law, "a breach of fiduciary duty claim can be properly dismissed if "it alleges the same operative facts and the same resulting injury" as a negligence claim, *Fabricare Equip. Credit Corp. v. Bell, Boyd & Lloyd*, 328 Ill.App.3d 784, 791 (1st Dist.2002), or if it mirrors a negligence claim. *Calhoun v. Rane*, 234 Ill.App.3d 90,(1st Dist.1992). A breach of contract claim is also subject to dismissal where it duplicates a malpractice claim. *See Mitchell v. Schoen*, No. 11 C 994, 2011 WL 2144211, at *2 (N.D. Ill. May 31, 2011) ("If a contract and a tort claim stem from the same common nucleus of operative facts and result in the same injury, the contract claim should be dismissed as duplicative."); *Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 744 (7th Cir. 2004) (legal malpractice claim could not be re-characterized as a breach of fiduciary duty claim or a breach of contract claim to avoid dismissal because such claims would be duplicative).

Plaintiffs insist that their claims for breach of fiduciary duty and breach of contract are not based on the same operative facts as the accounting malpractice claim. Plaintiffs attempt to support their position by listing out the general allegations contained in the Complaint, but do not show that different sets of operative facts go to different claims, or that distinct injuries are alleged (Pl. Resp. to AMEX Def. at pp. 13-14). Nevertheless, I decline to dismiss the breach of fiduciary duty claim as duplicative of the malpractice claim based on my interpretation that the former goes to intentional breaches of duty while the latter is limited to negligent breaches. *See generally Obermaier v. Obermaier*, 128 Ill.App.3d 602, 633 (1st Dist. 1984) (punitive damages

15

available where breach of fiduciary duty is intentional); *Cripe v. Leiter*, 291 Ill.App.3d 155, 158 (1st Dist. 1997) (malpractice claims involve only negligent conduct). The breach of contract claim is dismissed as duplicative, however, because it is based entirely on the breach of a duty of care rather than any specific contractual provisions (¶ 173).

Count VI will be treated as a breach of fiduciary duty claim against the Deutsche Bank Defendants. Illinois courts have not clearly recognized a separate tort for assisting in the breach of a fiduciary duty, but liability may be imposed directly against a defendant who aids and abets another's breach. *See Eastern Trading Co. v. Refco, Inc.*, 229 F.3d 617, 623 (7th Cir. 2000). Under Illinois law, a breach of fiduciary duty claim has three elements: "(1) that a fiduciary duty exists, (2) that the fiduciary duty was breached, and (3) that such breach proximately caused the injury of which the plaintiff complains." *See, e.g., Neade v. Portes*, 193 Ill.2d 433, 444 (2000). To properly allege that a defendant is liable for aiding and abetting a breach of fiduciary duty, a plaintiff should also allege facts to show the defendant "kn[ew] that the other's conduct constitute[d] a breach of duty and [gave] substantial assistance or encouragement to the other so to conduct himself." *See generally* RESTATEMENT (SECOND) OF TORTS § 876(B).

I have already determined the Complaint adequately alleges that Goldstein owed Plaintiffs a fiduciary duty. The Complaint also contains sufficient facts to reasonably infer that Goldstein breached this duty by making material misrepresentations and omissions regarding the nature of the Son of BOSS investment (¶¶ 72-73), and that these misrepresentations and omissions caused Plaintiffs' injury (¶ 93-94). Finally, the Complaint adequately alleges that the Deutsche Bank Defendants knew that Goldstein owed a duty to Plaintiffs (¶ 52), and substantially assisted him in breaching that duty by designing the Son of BOSS tax-shelter and executing the underlying option transactions with full knowledge that they lacked economic

substance (¶¶59-61, 103). Based on the above, Plaintiffs have adequately stated a claim for breach of fiduciary duty against all Defendants.

Defendants' motion to dismiss Count V is DENIED. Defendants' motion to dismiss Count VI is GRANTED in part; the Deutsche Bank Defendants will be treated as named under Count V based on a theory of aiding and abetting. Defendants' motion to dismiss Count VII is GRANTED.

### H. Count I: Civil Conspiracy

Finally, Defendants move to dismiss Plaintiffs' claim for civil conspiracy. Civil conspiracy is a recognized cause of action in Illinois. *Adcock*, 164 Ill.2d 54, 62 (Ill. 1994). The elements of a civil conspiracy are: "(1) an agreement between two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 209 Ill.2d 302, 317 (Ill. 2004). "The function of a [civil] conspiracy claim is to extend liability in tort beyond the active wrongdoer to those who have merely planned, assisted or encouraged the wrongdoer's acts." *Adcock*, 164 Ill.2d at 62. "It is only where means are employed, or purposes are accomplished, which are themselves tortious, that the conspirators who have not acted but have promoted the act will be held liable." *Id*.

A civil conspiracy claim that is "premised upon a course of fraudulent conduct can implicate Rule 9(b)'s heightened pleading requirements." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Based on the nature of the conspiracy alleged in this case—an agreement to market an illegitimate tax shelter scheme through misrepresentation and concealment of material facts—I find that Rule 9(b) applies to Count I. However, I also find that

it is appropriate to "relax" the application of the particularity requirement to allegations regarding the circumstances surrounding the conspiratorial agreement because—unlike specific representations or omissions relied upon by Plaintiffs—the requisite information rests largely, if not entirely, out of Plaintiffs' control. *See PharMerica Chicago*, 772 F.Supp.2d at 955; *In re Newell Rubbermaid Inc. Sec Litig.*, 2000 WL 1705279, at *14 (N.D. Ill. 2000).

Given this framework, I find that Plaintiffs have adequately pled a claim for civil conspiracy. The Complaint avers that Jenkens, Goldstein and AMEX entered into an agreement whereby Goldstein and AMEX "would prepare tax returns relating to Son of BOSS [and] would not advise the investors that the Jenkens Opinion Letter was baseless, or that there was any legal or factual infirmity or vulnerability in the position that [Plaintiffs] would be taking by filing tax returns asserting the claims for tax impact espoused by Jenkens." (¶ 63). In other words, two or more parties agreed to sell services (lawful purpose) through fraud (unlawful means). The Complaint also adequately alleges that Deutsche Bank Defendants entered into the conspiracy by agreeing to carry out the underlying option transactions with full knowledge that the investments could not generate legitimate tax benefits, in exchange for a portion of the fees charged by Jenkens (¶¶ 59-61, 64). Finally, Plaintiffs have adequately alleged that the underlying tort claims that survive Defendants' motions to dismiss—negligent misrepresentation by the AMEX Defendants, breach of fiduciary duty by all defendants, accounting malpractice by the AMEX Defendants—were committed in furtherance of the conspiracy.

Defendants' motion to dismiss Count I is DENIED.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED in part and DENIED in part. Plaintiffs are granted leave to file an amended complaint. Fed. R. Civ. P. 15(a)(2).

ENTER:

James B. Zagel
United States District Judge

DATE: April 5, 2013