UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN T. MCMAHAN AND
NORTHWESTERN NASAL AND SINUS
ASSOCIATES,

    Plaintiffs,

    v.

DEUTSCHE BANK AG; DEUTSCHE
BANK SECURITIES, INC., d/b/a
DEUTSCHE BANK, ROBERT
GOLDSTEIN, AMERICAN EXPRESS TAX
AND BUSINESS SERVICES, INC. n/k/a
MCGLADREY & PULLEN, LLP,

    Defendants.

No. 12 C 4356
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss the Complaint pursuant to Rules 12(b)(6) and 41(b) of the Federal Rules of Civil Procedure. For the following reasons, Defendants' Motion to Dismiss is granted in part and denied in part.

### BACKGROUND

In 2012, Plaintiffs John T. McMahan ("McMahan") and Northwestern Nasal and Sinus Associates ("NNASA"), instigated this lawsuit against Deutsche Bank AG and Deutsche Bank Securities, Inc. (collectively "DB"), Robert Goldstein ("Goldstein"), and American Express Tax and Business Services ("AMEX") (collectively the "AMEX Defendants"). Plaintiffs' amended complaint seeks damages for civil conspiracy, fraudulent concealment, negligent misrepresentation, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDBPA"), breach of fiduciary duty, aiding and abetting in the breach of a fiduciary duty, and accounting malpractice. All counts arise out of Plaintiffs' participation in a tax shelter

1

scheme known as the Son of Bond and Option Sales Strategy ("Son of BOSS") that was created, promoted, and executed by a network of banks, accounting firms and law firms across the United States. Ultimately, the Internal Revenue Service ("IRS") invalidated the purported tax benefits of the scheme, and the participants paid substantial fines and back tax payments.

Three counts against DB (fraudulent concealment, negligent misrepresentation, and violation of the ICFDBPA) and all counts against AMEX and Goldstein have since been dismissed. DB now moves to dismiss the two counts remaining against them: aiding and abetting Goldstein's breach of fiduciary duty, and civil conspiracy with Goldstein and AMEX.

**FACTUAL BACKGROUND**

In the early 1990s, McMahan and his corporation NNASA retained Goldstein, a certified public accountant, to perform tax and accounting services. In 2001, Goldstein referred McMahan to the now-defunct law firm Jenkens & Gilchrist ("Jenkens") to engage in a tax shelter strategy known as Son of BOSS. McMahan asserts that Goldstein and a lawyer from Jenkens met with him in 2001 and explained that Son of BOSS was a legitimate investment strategy that would generate either profits or capital losses that could be used to reduce his income tax liability. McMahan says he was told that Jenkens would prepare an independent legal opinion letter approving the Son of BOSS investment, which would protect Plaintiffs in the event of an IRS audit. McMahan also recalls being told that DB would handle the underlying financial transactions, which involved the sale of foreign currency options. Relying on these assurances, McMahan decided that he and NNASA would participate in Son of BOSS.

Despite these representations, Goldstein, Jenkens, and DB allegedly knew that Son of BOSS was an illegitimate tax-saving strategy designed solely to avoid tax liability and reap large fees from investors. Plaintiffs claim that, unbeknownst to them, Son of BOSS had been designed

and structured by Jenkens attorneys and DB employees in such a way that it was impossible to generate legitimate tax deductible losses, and nearly impossible to generate profits. Based on a notice released by the IRS in 2000 ("Notice 2000-44"), Plaintiffs argue AMEX and Goldstein knew or should have known that the IRS was investigating Son of BOSS and would likely soon disallow all deductions claimed as capital losses stemming from the program.

Nevertheless, Jenkens, DB, Goldstein and AMEX, an accounting firm that employed Goldstein during the relevant time period, allegedly entered into an agreement whereby Goldstein and AMEX would represent to Plaintiffs that Son of BOSS was a legitimate tax-saving strategy, recommend that Plaintiffs participate in the underlying options, and prepare Plaintiffs' tax returns to include losses from the Son of BOSS investment. In return, Goldstein and AMEX would receive a portion of the fees paid by investors to Jenkens for each Son of BOSS sale, and DB agreed to execute the underlying currency transactions. McMahan alleges that a fiduciary duty arose between Goldstein and himself, but alleges only a derivative duty with regard to Deutsche Bank.

As a result of this scheme, Plaintiffs filed a 2001 tax return that shielded millions of dollars from taxation via the Son of BOSS tax shelter. In December 2001, the IRS announced an amnesty program that allowed participants who voluntarily disclosed their participation in tax shelter strategies, such as Son of BOSS, to minimize liability for underpayment penalties without conceding liability for back taxes or interest. Defendants and the other co-conspirators allegedly concealed the amnesty program from Plaintiffs and later failed to inform Plaintiffs of the IRS' June 2003 invalidation of a number of tax shelter strategies, including Son of BOSS.

On October 26, 2010, the IRS issued a Notice of Final Partnership Administrative Adjustment in which Plaintiffs were advised that an increase in tax basis of $2,075,000 relating

to the Son of BOSS investment was disallowed. As a result, Plaintiffs owed the IRS hundreds of thousands of dollars in additional taxes, penalties, and interest payments.

## STANDARD OF REVIEW

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) does not test the merits of a claim, but rather the sufficiency of the complaint. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). In deciding a 12(b)(6) motion, the court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff. *Id.* at 1521. To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "A complaint should not be dismissed for failure to state [a] claim unless it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle the plaintiff to relief." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 546, 127 S.Ct. 1955, 1959 (2007).

Pursuant to Rule 41(b), "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action." Dismissal under Rule 41(b) is only appropriate when "there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing." *Brown v. Columbia Sussex Corp.,* 664 F.3d 182, 190 (7th Cir. 2011) (*quoting Maynard v. Nygren,* 332 F.3d 462, 467 (7th Cir. 2003)). When considering whether to dismiss a case for failure to prosecute, the court "should consider the frequency and magnitude of the plaintiff's failure to comply with deadlines for the prosecution of the suit, the apportionment of responsibility for those failures between the plaintiff and his counsel, the effect of those failures on the judge's calendar and time, the prejudice if any to the defendant caused by the plaintiff's dilatory conduct, the probable merits of the suit, and the consequences of dismissal for the social objectives of the type of litigation that the suit

represents." *Aura Lamp & Lighting Inc. v. Int'l Trading Corp.*, 325 F.3d 903, 908 (7th Cir. 2003).

## DISCUSSION

### I. Failure to State a Claim

Defendants move to dismiss on two grounds, the first of which is failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Pursuant to 12(b)(6), Defendants argue that both the civil conspiracy claim and the aiding and abetting in breach of a fiduciary duty claim were insufficiently pleaded and should be dismissed.

### A. Civil Conspiracy

To state a claim of civil conspiracy, a plaintiff must allege that two or more persons made "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Group., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007); *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 720 N.E.2d 242, 258 (Ill. 1999). Once a defendant knowingly and voluntarily agrees with another to commit an unlawful act, that defendant may be held liable for any tortious act committed in furtherance of the conspiracy, when the tortious act is intentional or negligent in nature. *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 645 N.E.2d 898 (Ill. 1994).

A pleading that merely characterizes a combination of acts as a civil conspiracy is insufficient to survive a defendant's motion to dismiss. *Buckner v. Atlantic Plant Maintenance, Inc.,* 182 Ill. 2d 12, 23-24, 694 N.E.2d 565, 230 Ill. Dec. 596 (1998). Because civil conspiracy is not an independent tort, when "a plaintiff fails to state an independent cause of action,

5

underlying the conspiracy allegations, the conspiracy claim also fails." *Indeck North American Power Fund, L.P. v. Norweb PLC*, 316 Ill. App. 3d 416, 432, 735 N.E.2d 649, 249 Ill. Dec. 45 (2000); *Cannon v. Forest Pres. Dist. of Cook County,* 2015 U.S. Dist. LEXIS 24659 (N.D. Ill. 2015) (dismissing civil conspiracy count when underlying fraud counts also dismissed); *Elias v. Stewart Title of Ill.*, 2011 U.S. Dist. LEXIS 33484 ((N.D. Ill. 2011) (court must dismiss civil conspiracy count because underlying count is time-barred).

In this case, Plaintiffs allege that DB knew of the fraudulent nature of the Son of BOSS and entered into an agreement with AMEX and Goldstein to devise and market the scheme to McMahan and NNASA, thus forming a conspiracy. In their amended complaint, Plaintiffs state that pursuant to this agreement, AMEX and Goldstein committed intentional or negligent tortious acts of fraudulent misrepresentation, negligent misrepresentation, malpractice, and breaches of fiduciary duty. However, the counts against AMEX and Goldstein, from which the claims against DB derive, have been dismissed with prejudice. Furthermore, the three counts against DB for fraudulent concealment, negligent misrepresentation, and violation of the ICFDBPA have also been dismissed with prejudice. Plaintiffs lack the requisite independent cause of action underlying the civil conspiracy, so this count must be dismissed.

**B. Aiding & Abetting in the Breach of a Fiduciary Duty**

Illinois courts have not clearly recognized a separate tort for assisting in the breach of a fiduciary duty, but liability may be imposed directly against a defendant who aids and abets another's breach. See *Eastern Trading Co. v. Refco, Inc.,* 229 F.3d 617, 623 (7th Cir. 2000). This analysis has two parts. First, plaintiff needs to allege a breach of fiduciary duty by showing: "(1) that a fiduciary duty exists, (2) that the fiduciary duty was breached, and (3) that such breach proximately caused the injury of which the plaintiff complains." *See, e.g., Neade v. Portes*, 193

Ill.2d 433, 444, 739 N.E.2d 496, 250 Ill. Dec. 733 (2000). In Illinois, "[a] fiduciary relationship exists where one party reposes trust and confidence in another, who thereby gains a resulting influence and a superiority over the subservient party. This is generally accomplished by establishing facts showing an antecedent relationship that gives rise to trust and confidence reposed in another." *Khan v. Deutsche Bank AG*, 978 N.E.2d 1020, 1041, 365 Ill. Dec. 517 (Ill. 2012); *Ray v. Winter*, 67 Ill. 2d 296, 304, 367 N.E.2d 678, 10 Ill. Dec. 225 (Ill. 1977). Second, plaintiff needs to allege aiding and abetting liability, which requires a showing that: "(1) the party whom the defendant aids performed a wrongful act causing an injury, (2) the defendant was aware of his role when he provided the assistance, and (3) the defendant knowingly and substantially assisted the violation." *Hefferman v. Bass*, 467 F.3d 601 (7th Cir. 2006); *see Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 799 N.E.2d 756, 767, 278 Ill. Dec. 891 (Ill. App. 2003).

Plaintiffs' amended complaint alleges that AMEX and Goldstein owed them a fiduciary duty due to their professional relationship as accountants and tax consultants. They claim this duty was breached when AMEX and Goldstein advised the Plaintiffs to enter into the Son of BOSS scheme, which later resulted in the IRS taxes, penalties, and interest payments assessed against plaintiffs. Plaintiffs then allege that DB knew about AMEX's and Goldstein's fiduciary duties, knew the fraudulent nature of the SON of BOSS scheme, and assisted in furthering the scheme by executing the underlying currency transactions.

DB argues that Plaintiffs are estopped from any arguments that depend on the fiduciary duty claim as that claim, along with all others asserted against AMEX and Goldstein, were dismissed for failure to prosecute under Fed. R. Civ. P. 41(b). DB argues that the dismissal was an adjudication on the merits, so the doctrine of res judicata applies and Plaintiffs may not

pursue an aiding and abetting claim. *See Kimmel v. Texas Commerce Bank*, 817 F.2d 39, 40 (7th. Cir. 1987) (dismissal for failure to prosecute is adjudication on the merits because "the defendant must incur the inconvenience of preparing to meet the merits because there is no initial bar to the Court's reaching them.") (*quoting Costello v. United States*, 365 U.S. 265, 285 (1961)); *Continental Waste Systems, Inc. v. Zoso Partners*, 727 F. Supp. 1143, 1151 (N.D. Ill 1989) (dismissal for failure to prosecute "indisputably operates as a judgment on the merits under Rule 41(b).").

In their reply Plaintiffs argue that, as pleaded in their amended complaint, Jenkens, along with AMEX and Goldstein, owed Plaintiffs a fiduciary duty and DB aided and abetted Jenkens' breach of this fiduciary duty. Plaintiffs' amended complaint states that they retained Jenkens for the purposes of structuring and implementing the Son of BOSS strategy and producing an opinion letter. Despite its role as a creator, designer, and marketer of this strategy, Jenkens issued a purportedly independent opinion letter asserting that the strategy was legitimate. Plaintiffs allege they relied on this opinion letter, which was actually a prefabricated form letter, and remitted legal fees to Jenkens for professional services rendered.

These facts are sufficient to show a fiduciary relationship between Plaintiffs and Jenkens, as a fiduciary relationship exists as a matter of law between an attorney and client. *Geaslen v. Berkson, Gorov & Levin, Ltd.*, 155 Ill. 2d 223, 228, 613 N.E.2d 702, 184 Ill. Dec. 385 (Ill. 1993). This clearly establishes the existence of a fiduciary duty that Jenkens owed to Plaintiffs. Coupled with allegations of DB's execution of the underlying currency transactions, knowledge of the opinion letter, and assistance in facilitating the promotion of the Son of BOSS scheme, Plaintiffs have pleaded sufficient facts to proceed on this count.

**II. Prejudice Under Rule 41(b)**

Defendants' second argument is that the case against them should be dismissed for prejudice under Rule 41(b). A court may dismiss an action with prejudice under Fed. R. Civ. P. 41(b) if the plaintiff fails to prosecute or to comply with any court order. Generally, a court should exercise this right sparingly and should dismiss a case under Rule 41(b) only "when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing." *Salata v. Weyerhaeuser Co.*, 757 F.3d 695, 699 (7th Cir. 2014) (quoting *Webber v. Eye Corp.*, 721 F.2d 1067, 1069 (7th Cir. 1983)). Dismissal has been characterized as a "harsh sanction that should be imposed infrequently." *Roland v. Salem Contract Carriers, Inc.*, 811 F.2d 1175, 1177-78 (7th Cir. 1987).

On December 12, 2013, this Court entered an order stating, "Pursuant to the Court's [Motion to Dismiss] ruling with respect to Defendants AMEX and Goldstein and the arbitration issue, the Court is compelling arbitration and staying rather than dismissing the suit. The matter is also stayed with respect to Deutsche Bank. There is a claim that one aspect of the arbitration clause is unconscionable and unenforceable. This issue may be addressed by the arbitrator." The order set no deadlines.

Defendants argue they will suffer prejudice due to Plaintiffs' failure to commence arbitration and Goldstein's death on May 14, 2014. Much of the case is centered around conversations between McMahan and Goldstein, and Defendants worry that Goldstein's absence will give Plaintiffs an unfair advantage because McMahan will be able to testify to the content of these conversations without rebuttal.

Plaintiffs argue that they have diligently pursued arbitration. To support this assertion, they have submitted an affidavit from Plaintiffs' counsel chronicling their lengthy delay of

9

almost one year to secure an expert witness (which was required to advance the arbitration process) due to lack of funds. This affidavit also reveals that Plaintiffs' counsel did not communicate with Defendants' counsel regarding their arbitration against AMEX and Goldstein from February 28, 2014, to June 11, 2015, a period of 468 days. But Plaintiffs' claims against DB were stayed during this time, as indicated in the December 12, 2013 order. The stay was not lifted until September 1, 2015. Therefore, the 468-day period of silence occurred during a time that Plaintiffs were neither required nor permitted to move forward on their claims against DB.

Additionally, McMahan submitted an affidavit describing financial hardship due to his own health issues, his wife's illness, and the IRS taxes, penalties, and interest payments for the Son of BOSS scheme. There is no evidence that Plaintiff exploited or otherwise proffered these issues in bad faith. Finally, Plaintiffs argue all parties have been prejudiced by Goldstein's death and that 735 Ill. Comp. Stat. § 5/8-201, also known as the Dead Man's Act, will protect the Defendant. The Act states, with a few exceptions, that "no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased … or to any event which took place in the presence of the deceased." *Id.*

I previously held that Plaintiff's dilatory conduct caused prejudice to their claims against AMEX and Goldstein, but I do not find evidence of substantial prejudice to their claims against DB. Due to the stay, Plaintiffs were unable to move forward with their litigation against DB for twenty-one of the last twenty-eight months. While I acknowledge the difficulties Defendants face in mounting a defense without Goldstein, Rule 41(b) is a harsh sanction, particularly so when Plaintiffs' hands were tied for much of the period of alleged delay. Thus, I decline to dismiss the case on this ground.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted in part and denied in part.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: March 15, 2016